Bell, J.
It is contended by relators that there has been a common-law dedication of the roads in question, and that the township trustees are required by Sections 5571.02 and 5571.12, Bevised Code, to maintain and repair them, irrespective of a formal acceptance of such dedication by the Board of County Commissioners.
Bespondents, on the other hand, contend that under the provisions of Section 6886, General Code, which was in effect at the time of the recording of the plat in question, there must be an acceptance by the county commissioners before there can arise any obligation on respondents’ part to maintain the roads.
Section 6886, General Code (now Section 5553.31, Bevised Code), in the portion pertinent herein, read as follows:
“Any person or persons may, with the approval of the county commissioners, dedicate land for road purposes. A definite description of the lands to be dedicated with a plat of the same thereto attached and signed by the party dedicating the same, with the approval and acceptance of the commissioners endorsed thereon, shall be placed upon the proper road records of the county in which such road is situated. * # * ”
Three cases decided by this court bear examination in connection with the question here presented. The first, in point of time, is Lessee of Village of Fulton v. Mehrenfeld, 8 Ohio St., *150 440, in which, more than a century ago, this court recognized, as follows, the applicability of common-law dedication in Ohio:
“Lands may be dedicated to public uses for roads or streets, by conforming to the statutory requirements, or in accordance with the rules of the common law. Either mode is efficacious.”
Peck, J.,
in the opinion in that case, set out the common-law rule as follows:
“To constitute a binding dedication of ground to public uses at common law, there must have been an intention to dedicate, and an actual dedication on the part of the owner, and an acceptance on the part of the public, which may be- proved by the circumstances of the case.”
The second case, relied on by relators to sustain the judgment herein, is Railroad Co. v. Village of Roseville, 76 Ohio St., 108, 81 N. E., 178, where this court held in paragraphs one and three of the syllabus:
“1. To show the establishment of a street by a common-law dedication, it is essential to prove clearly that the owner of the land intended to donate it for that use, and to prove also an acceptance. ÍC# * *
“3. An acceptance, by a city or village, of the dedication of a street cannot be shown by proof of user by the public, but it is essential that acts of acceptance by its proper officials be shown. ’ ’
The third case is that of Doud v. City of Cincinnati, 152 Ohio St., 132, 87 N. E. (2d), 243, where, in the first paragraph of the syllabus, it was held:
“A dedication and acceptance of private property for a public use may result from the use of such property by the public, with the silent acquiescence of the owner, for a period of time sufficient to warrant an inference of an intention to make such dedication and to constitute such acceptance.”
In each of those cases there are holdings and statements to which the parties herein may point with much justification as supporting their respective positions. Unfortunately, however, none of the three cases can be relied on to decide the instant controversy.
Although the relators may obtain some support for their *151 position from the holding in the Mehrenfeld case, supra, that an acceptance on the part of the public “may be proved by the circumstances of the case,” they can get little consolation from the outcome of the case. In that case, a lessee of a village was attempting to eject the purchaser of property at one end of a street from using the street, claiming a common-law dedication thereof to, and an acceptance by, the village. The court found that it was doubtful whether there had been an actual dedication of that portion of the street, but that, even if there had been, there had in fact been no acceptance of such dedication by the village authorities.
The strongest statement on which the relators may rely is probably that of Judge.Hart in the Doud case, supra, where he said:
“To have a common-law dedication of property there must be an intention of the owners that the property be dedicated to public use and an acceptance of the property by public authorities for such use. Such acceptance, however, may be accomplished by a continuous use of the property for public purposes. No formal acceptance as a matter of record is necessary. ’’ (Emphasis added.)
In the Doud case, however, the city had tapped into a sewer located under private property, had connected its own public sewers with it and thereafter for a period of many years had used it as a public sewer. The real basis of the decision there was estoppel, as is shown by the following excerpt from Judge Hart’s opinion:
“In the opinion of the court, the affirmative act of the defendant in 1932 in connecting its public sewer with the sewer in question and incorporating it into the public sewer system for the purpose of drainage from defendant’s Beverly Hills Subdivision estops defendant from denying that the sewer became a public sewer devoted to a public use.”
The apparent recognition by this court that a formal acceptance by the public authorities is not necessary to complete a common-law dedication, but that such acceptance “may be proved by the circumstances of the case, ’ ’ removes some of the force from the syllabus of the Roseville case, supra. But even accepting the rule of that case at the most which is claimed for *152 it by the respondents, i. e., that dedication and acceptance are prerequisite to their liability, it is doubtful whether it can support appellants’ case. Judge Summers said in the opinion of that case:
“It is well settled that in order to deprive the owner of his property by a common-law dedication it must clearly appear not only that he intended to and did give it to the public but also that the gift was accepted. That the railroad company intended to dedicate this so-called street or a way over its tracks and ground to the public does not clearly appear.” (Emphasis added.)
The determination that there had been no dedication by the railroad company of its land for public use disposed of the controversy in the Roseville case. Having found a failure of proof on the dedication question, it was unnecessary for the court to discuss the question of acceptance by the public authorities.
There is no serious question as to the attempt to make a dedication in this case. The petition alleges, and for the purpose of demurrer the allegation must be accepted as true, that there was a dedication by the owners as evidenced by the plat of the subdivision on record in the recorder’s office.
The remaining question is whether the allegation, that “said roads have been open to the public and used by the public and lot owners since said date, thus having been accepted on behalf of the public,” is a sufficient allegation, against demurrer, to impose liability for repair on the township trustees under Sections 5571.02 and 5571.12, Revised Code.
Giving this allegation its most favorable interpretation, it shows only a user by the public. By no stretch of the words used in the petition can a formal acceptance by the county commissioners be implied. Section 5553.31, Revised Code.
Although, as pointed out herein, the question has not been specifically decided by this court, it has been generally accepted by text writers that to constitute an acceptance of land dedicated for street or road purposes mere user by the public, without an acceptance by responsible public authorities, is not sufficient to charge those authorities with the duty of maintenance. See 17 Ohio Jurisprudence (2d), 37, Dedication, Section 32.
*153 Two factors are convincing in prompting the adopting of such a rule. In the first place, a negligent violation of the duty to maintain streets which it is obligated to maintain imposes on a board of trustees liability for damages suffered by anyone as a result thereof. Section 5571.10, Bevised Code. It would seem logical that some acceptance of the responsibility and consequent potential liability should be required prior to imposing such responsibility and liability through the unilateral act of a person or group of persons who decide to dedicate their land for the use by the public as roads or streets.
In the second place, the maintenance of streets and roads today entails much more than the mere dragging and spreading of a little gravel which was sufficient to accommodate the horse and buggy travel of a generation or so ago. In these days of multi-million dollar cost of streets and highways and the hard-pressed financial situation that confronts not only township officials but officials of other local subdivisions as well, it is most unrealistic to impose on such officials, without their consent, the added burden of maintaining the streets and roads in all the housing projects and subdivisions that are mushrooming throughout the state. To impose such a duty might well subject township trustees to the responsibility of improving and maintaining many of the country lanes leading only to a single farmhouse merely because deliverymen, mailmen and other segments of the public have been using that lane for a period of years.
It can not be denied, and it is not the intention in this case to deny, that user of a street or road by the public following an intention to dedicate to the public may well constitute such acceptance of the dedication as to estop the owners of the fee from interfering with its continued use by the abutting-property owners and the public. Nor do we intend to say that an acceptance can not be implied as a result of the authorities taking some positive action such as the actual improvement of a street or road. But in the absence of a formal acceptance by the county commissioners or actions from which such acceptance can be implied, such a user by the public in general is not such an acceptance as will impose responsibility on a Board of Township Trustees for the maintenance of roads within their township.
*154 Since there are no allegations in the petition of a formal acceptance or facts from which such acceptance can be implied, the trial court should have sustained the demurrer of the respondents.
The judgment of the Court of Appeals is, therefore, reversed, and the cause is remanded to that court with instructions to sustain the demurrer.

Judgment reversed.

Weygandt, C. J., Zimmerman, Taft, Matthias and 0 ’Neill, JJ., concur.
Herbert, J., not participating.